UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-89 (JWB/LIB)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **GOVERNMENT'S SENTENCING** ) **MEMORANDUM** ) |
| JOHN DAVID DEGELAU, | ) ) |
| Defendant. | ) |

John David Degelau, a then-youth ski coach, knowingly collected thousands of images depicting the sexual abuse of children. But Degelau did not just possess images he found on the internet. He also created his own morphed images that imposed the faces of children he coached onto the bodies of other CSAM victims, and then altered the images to make it appear as though Degelau was performing sex acts on the children. Mr. Degelau cultivated a CSAM collection that included images showing the graphic sexual exploitation and penetration of prepubescent children. Degelau's actions severely harmed *real children* and *real families*, including the families and children who trusted him as a coach. For Mr. Degelau's conduct, the United States respectfully recommends that the Court impose a sentence including 91 months' imprisonment, a 7-year term of supervised release, and the payment of $12,500 in assessments pursuant to laws passed to assist victims of crimes

like those that the defendant committed.

I. **Mr. Degelau's Criminal Conduct**

In October 2022, law enforcement received two cyber-tips about suspected CSAM being uploaded into Adobe Photoshop by user "John Degelau." ECF No. 54, Presentence Investigation Report ("PSR") ¶ 7. Investigators noted that some of the images had a different face transposed on the original CSAM image. PSR ¶ 7. Law enforcement learned that the suspect, Mr. Degelau, was the head coach for a Duluth-area youth ski team. PSR ¶7.

Law enforcement executed a search warrant at Mr. Degelau's residence and seized numerous electronic devices. PSR ¶ 8. The subsequent forensic review of those devices revealed Degelau's trove of CSAM. PSR ¶ 8. Together, the defendant's devices had more than 18,000 CSAM images or videos, including more than 800 files from known victim series, and images showing the sexual abuse of children under the age of 12. PSR ¶ 8-9.

Mr. Degelau's conduct was not limited to passively collecting content from the internet. Degelau also used photo editing software to combine images of children he coached on the ski team with existing CSAM images. PSR ¶ 9. Generally, he placed the faces or torsos of children he coached onto the CSAM images. Degelau also inserted photos of his penis into the morphed images, so that it appeared that Degelau was sexually penetrating the children he

coached. PSR ¶ 9. Investigators identified multiple minor victims, ages 12-16, who were victimized by Degelau's imposing their images onto existing CSAM. PSR ¶ 9.

In April 2024, a grand jury returned an indictment charging Mr. Degelau with one count of possession of child pornography and one count of attempted possession of child pornography. ECF No. 1. On February 12, 2025, the defendant pled guilty to both counts. ECF No. 48.

## II. The Presentence Report

The government agrees with the facts and conclusions set out in the PSR, which results in a Guidelines range of 78-97 months based on a total offense level of 28 and a criminal history category of I. PSR ¶ 68.

## III. The Appropriate Sentence

A significant custodial sentence is necessary to account for Mr. Degelau's serious conduct and the harm that he caused his victims. His conduct collecting and viewing a huge quantity of CSAM files victimized anew each victim who is depicted. And while Mr. Degelau was not charged with producing child pornography, his conduct using photo-editing software to generate new morphed CSAM images of children he coached is aggravating in a possession of child pornography case. The harm this conduct caused is akin to a production offense, where victims are left to worry forever that the images created of them

3

are "lurking in some dark, disgusting, corner of the internet and that they might again come back to haunt and traumatize [the victim] again." PSR ¶ 13.

The government acknowledges that the imposed sentence should also account for the fact that Mr. Degelau pled guilty and has taken initial steps to understand his predilections in the hopes of mitigating the risk of reoffending. After considering the relevant factors, the United States respectfully submits that the imposition of a sentence including 91 months' imprisonment, a 7-year term of supervised release, and $12,500 in assessments to go toward crime victim funds is sufficient but not greater than necessary to achieve the goals of sentencing.

### A. The Nature and Circumstances of the Offense

The horrific nature of child pornography is well documented. Individuals who collect images of child exploitation exist in a community necessarily shrouded in secrecy. This community scrupulously protects its content and uses coded language to classify and categorize different forms of sexual abuse. Mr. Degelau entered this community to amass his own enormous collection of content comprised of more than 18,000 files of suspected CSAM. PSR ¶ 8. His content including particularly disturbing images, including files showing the sexual penetration of prepubescent children. PSR ¶ 9.

But Mr. Degelau did more than gather a private collection. As explained

4

above, he abused the trust of children he coached by morphing their images onto CSAM. His devices also contained images of children swimming at a beach, apparently taken without their knowledge from a concealed position behind bushes or trees. PSR ¶ 31.

Make no mistake – Mr. Degelau abused every child whose image he collected, viewed, and manipulated. The PSR specifically detailed the ways in which Degelau's conduct devastated the children he coached and their families. PSR ¶ 13. Tragically, survivors of child abuse and exploitation report higher rates of PTSD, suicide, anxiety, depression, eating disorders, and other disorders that can affect them for a lifetime.[1] Mr. Degelau committed a grave offense that severely harmed his victims, and he requires serious punishment.

B.  **History and Characteristics of the Defendant**

Mr. Degelau's upbringing was remarkably stable and supported. His upbringing was free from poverty or abuse. PSR ¶ 89. He was a good student

---

[1] *See, e.g.*, Molnar, B. E., Berkman, L. F., & Buka, S. L., *Psychopathology, childhood sexual abuse and other childhood adversities: Relative links to subsequent suicidal behavior in the US*, Psychol. Med., 31, 965–77 (2001); Paolucci, E. O., Genuis, M. L., & Violato, C., *A meta-analysis of the published research on the effects of child sexual abuse*, J. of Psychol., 135(1), 17–36 (2001); Putnam, F. W., *Ten-year research update review: Child sexual abuse*, J. Am. Acad. of Child and Adolescent Psych., 42(3) (2003).

and successfully pursued higher education. PSR ¶ 89. Unfortunately, in more recent years, he has struggled with mental health issues. PSR ¶¶ 46-48, 52.

During the pendency of this case, Mr. Degelau has undertaken acts for which he deserves credit. He entered a guilty plea, which permitted the victims to avoid trial, a potentially painful experience. He also completed a psychological evaluation during his pretrial release and appears motivated to understand his conduct so that he will not reoffend. PSR ¶ 45. Additionally, his written statement accepting responsibility appears genuine and directly acknowledged the harm his actions caused. PSR ¶ 15.

### C. Need for Deterrence

Deterrence is an important aspect of criminal sentencing, especially in the context of crimes against children. A significant sentence of 91 months is warranted here to effectuate both specific and general deterrence. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) (explaining the importance of severe criminal sanctions in child exploitation matters in hopes of "dry[ing] up the market."). Additionally, a 91-month sentence would not create any unwarranted disparities. *See, e.g.*, U.S. Sentencing Comm., *Federal Sentencing of Child Pornography: Non-Production Offenses* 21 (June 2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf at

6

27 (finding that a 103-month sentence represented the average for non-production defendants when combining distribution, receipt, and possession-based offenses).

### D.  Restitution and Financial Assessments

The United States has not received any requests for restitution from known victims. However, if such a request is received before sentencing, restitution would be mandatory pursuant to 18 U.S.C. § 2259(b)(2).

The defendant is also subject to the provisions of the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018. PSR ¶ 80. The AVAA created a special assessment for defendants convicted of child pornography crimes. 18 U.S.C. § 2259A(a). These assessments support the Child Pornography Victims Reserve Fund ("CPVRF"), from which some victims can elect to receive compensation in addition to, or in lieu of, restitution owed to them individually. *See* 18 U.S.C. § 2259(d). Congress made clear that its intent in passing the AVAA was "that victims of child pornography be compensated for the harms resulting from every perpetrator who contributes to their anguish." PL 115-299, December 7, 2018, 132 Stat. 4383.

Pursuant to the AVAA, the Court shall order Mr. Degelau to pay an assessment of not more than $17,000. 18 U.S.C. § 2259A(a)(1); (*see* PSR ¶ 80.) In determining the amount to assess, the Court should consider the factors set

forth in §§ 3553(a) and 3572. 18 U.S.C. § 2259A(c). The government recommends that the Court impose an AVAA special assessment of $2,500 on Mr. Degelau. Such an assessment is appropriate to ensure that the CPVRF is available to assist the victims of child pornography in what is often a life-long battle to recover. Although $2,500 represents a financial burden on Mr. Degelau, it is not an undue one, especially since this amount may be collected over time and be adjusted if Mr. Degelau's financial circumstances do not allow for payment. *See* 18 U.S.C. §§ 2259A(d)(1), 3572(a)(1), 3572(d). Additionally, it appears the defendant's financial circumstance may permit him to fulfill such an obligation. PSR ¶ 63.

The government asks that the Court make any AVAA assessment collectable in monthly payments and order that it come due only after Mr. Degelau satisfies his mandatory special assessment under 18 U.S.C. § 3013 and any restitution obligations. *See* 18 U.S.C. § 2259A(d)(2); *see also United States v. Odegaard*, Case No. 21-cr-272 (PJS) (D. Minn. May 10, 2022) (sentencing judgment for defendant who pled guilty to one count of possession of child pornography pursuant to an Information, in which he was sentenced to a $17,000 AVAA assessment and $5,000 JVTA assessment, in addition to restitution).

Mr. Degelau is also subject to a special assessment of $10,000—$5,000 per count of conviction—under the Justice for Victims of Trafficking Act of 2015 ("JVTA"). 18 U.S.C. § 3014 (amended by PL 117-180, Sept. 30, 2022, 136 Stat. 2133); (*see* PSR at ¶ 79.) Assessments under this statute provide monetary support for the Domestic Trafficking Victims' Fund ("DTVF"), which in turn provides grants and programming that assist victims of human trafficking, child exploitation, and child abuse. *See* 18 U.S.C. §§ 3014(c), 3014(e). Pursuant to the JVTA, the Court must impose this assessment on any "non-indigent person" convicted of a child exploitation crime, including possession of child pornography. 18 U.S.C. § 3014(a)(3). In *United States v. Kelley*, 861 F.3d 790 (8th Cir. 2017), the Eighth Circuit fashioned a standard for assessing "non-indigency." *See id.* at 799-802. It directs courts to look at both a defendant's current assets and his future earning potential. *See id.* at 801-02. Under this standard, Mr. Degelau is not indigent, and the assessment should apply. Mr. Degelau presently has a substantial positive net worth, reports receiving regular income even when he is not employed, and has demonstrated the ability to secure gainful employment in the past. PSR ¶¶ 57-59, 63. He is also likely to be released with many years of earning potential ahead of him.

The government's requested assessments do not appear unduly burdensome when compared against Degelau's net worth and earning potential and would substantially benefit victims of crimes like the ones he committed.

## IV.  CONCLUSION

For the foregoing reasons, the United States requests that the Court impose a sentence of 91 months' imprisonment, a 7-year term of supervised release, and a total of $12,500 in AVAA and JVTA special assessments.

Dated:  July 7, 2025 	Respectfully submitted,

JOSEPH H. THOMPSON
Acting United States Attorney

*/s/ David Green*
BY: DAVID GREEN
Assistant U.S. Attorney
Attorney I.D. No. 397477